**NORTHWEST BANK & TRUST COMPANY, Plaintiff,**

v.

**FIRST ILLINOIS NATIONAL BANK and Christopher L. Bryant, Defendants.**

**No. 3–00–CV–90023.**

United States District Court, S.D. Iowa, Davenport Division.

Sept. 13, 2002.

Hayward L. Draper, Nyemaster Goode Voights West Hansell & O'Brien PC, Des Moines, IA, for Plaintiff.

Fred E. Beaver, Thomas D. Hanson Hanson Bjork & Russell LLP, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

For the third time since this case was removed from the Iowa District Court for Scott County, this Court has before it one of the various incarnations of Defendants' Motion For Summary Judgement. To characterize the matter as fully submitted is a gross understatement, but such will suffice for now. The Court also has before it Plaintiff's Request for Leave to File Notice of Non–Waiver and Notice of Non–Waiver. The motion is granted, and the Court has noted Plaintiff's Notice of Non–Waiver. With reference to the discussion below, Defendants' motion for summary judgment is also granted on all claims.

## I. BACKGROUND

This case begins with a dispute over a loan participation agreement between two sophisticated banks from the Quad Cities area of eastern Iowa and western Illinois. Plaintiff, Northwest Bank and Trust (Northwest) is a federal savings bank with its principal place of business in Scott County, Iowa. Defendant First Illinois National Bank (FINB) was at all material times a national bank with its principal place of business in Savannah, Illinois. Due to a merger subsequent to the transactions involved here, FINB has a new name, THE National Bank. The second Defendant, Christopher Bryant, was President of FINB during the times relevant to this lawsuit.

In the fall of 1998, FINB's commercial banking customers included several corporate entities owned and controlled by Thomas Jager, a Quad Cities area entrepreneur. Jager's affiliated corporations involved a number of business activities including real estate ventures, manufacturing and the sale and servicing of Government National Mortgage Association (GNMA) mortgage backed securities, as well as participating in U.S. Department of Housing and Urban Development coinsurance loans. Jager operated his businesses through a highly complex corporate structure of parent-subsidiary and affiliate corporate entities. New Uchtorff Company was a manufacturer of component and replacement parts for agricultural machinery. In its manufacturing business, New Uchtorff Company leased equipment and real estate from Whitehall Funding, Inc. Whitehall funding was owned by Heartland Funding Inc., which conducted various businesses ancillary to Whitehall. Heartland Funding, Inc. was in turn owned by R.P., Inc., a corporation owned in toto by Jager.

Before November 1998, Plaintiff Northwest had no business dealings with Thomas Jager. FINB's relationship with Mr. Jager, however, was multiplex. FINB had lending relationships with R.P., Inc., Heartland, Whitehall, New Uchtorff, as well as other Jager related entities. In addition to having various checking accounts for these entities, Whitehall had numerous escrow and borrower deposit accounts for its GNMA business at FINB as well as deposit and other banking relationships. The integrated relationship between FINB and the Jager companies was such that numerous deposits and withdrawals, including transfers between and among the several accounts, occurred on a daily basis.

In the fall of 1998, Jager approached FINB to obtain additional financing for the New Uchtorff Company. FINB prepared an internal credit request for its own use, identifying the purpose of the loan, the collateral, etc. FINB, however, was nearing to its legal lending limit and

could not advance the entire amount requested. In November, with Thomas Pastrnak, one of Jager's attorneys, acting as an early intermediary, FINB contacted Northwest regarding the purchase of a loan participation agreement for the proposed additional financing of Whitehall Funding, Inc.'s affiliate, the New Uchtorff Company. Northwest's internal policy, as well as safe and sound banking practices, required it to make its own investigation and underwrite a loan in the same fashion and using the same standards it would use if initiating the loan. Thus, at Northwest's request, FINB prepared and submitted certain documents regarding the proposed financing, the client, and the loan participation agreement.

By December 14, 1998, Northwest had prepared a "Loan Analysis and Borrower Review" regarding the subject loan and borrower that reflected a high degree of confidence in Jager's management ability, and Whitehall's satisfactory credit history. Northwest's Internal Loan Committee approved the loan on December 22, 1998, and the Loan Committee of the Board of Directors approved the loan the following day. On December 29, 1998, FINB and Northwest executed the loan participation agreement on a customary form of which Northwest is familiar and had previously used. FINB's actions both before and after closing on the Loan Participation Agreement are now the subject of this lawsuit.

## II. Plaintiff's Resistance Papers Fail to Conform to the Local Rules

■ In an Order dated July 16, 2002, this Court decided several procedural motions regarding Plaintiff's failure to comply with the Local Rules. Federal law and the Federal Rules of Civil Procedure grants each District Court the power to adopt rules governing its practice. 28 U.S.C. § 2071; Fed.R.Civ.P. 83. Once adopted, such rules of practice have the binding force and effect of law on both the parties and the Court that promulgated them. *Weil v. Neary*, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929), *Biby v. Kansas City Life Ins. Co.*, 629 F.2d 1289, 1293 (8th Cir.1980). Plaintiff's Amended Response Under Local Rule 56.1(b)(2), and Plaintiff's Statement of Material Facts and Disputed Issues for Trial failed to conform to the standards of LR 56.1(b). Local Rule 56.1(b) mandates that a party resisting a motion for summary judgment must file certain documents including:

2. A response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact;

3. A statement of additional material facts that the resisting party contends preclude summary judgment.

■ As it relates to Plaintiff's Response Under Local Rule 56.1(b)(2), Local Rule 56.1(b) states:

A response to an individual statement of material fact that is not expressly admitted must be supported by references to those **specific** pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond to an individual statement of material fact constitutes an admission of that fact. *(emphasis added)*

The response this Court reviewed in its previous order, however, contained none of this. Rather, Plaintiff's response failed to expressly admit or deny much of anything, preferring instead to be simply argumentative. Where denials of Defendants' statements of fact did occur, Plaintiff failed to cite to any **specific** record facts contained in its appendix, instead citing to

broad spans of its labyrinthian fifty-four page Statement of Material Facts. Such a document is not a proper response and does not comply with the local rules.

The same holds true for Plaintiff's Statement of Material Facts and Disputed Issues for Trial. The next paragraph of Local Rule 56.1(b) reads:

> *Each individual statement of additional material fact must be concise, numbered separately,* and supported by references to those *specific* pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix containing that part of the record.

The statement of additional material facts submitted by Plaintiff, in contrast, was a sprawling fifty-four page enigma of legal argument and allegation. Plaintiff's statement of additional facts offered eighty-nine paragraphs, many with sub-paragraphs up to i. Neither concision nor specificity were anywhere to be found within its pages. Accordingly, this Court found that such a document fell outside the boundaries of the Local Rules.

■ As neither of these submissions comported with the Local Rules, the Court ordered Plaintiff to resubmit both. In so doing this Court recognized that in finding violations of the Local Rules, the Court seeks to do justice and not simply to punish. The Court then denied Defendants' requests for the offending documents to be stricken from the record, to deem all of Defendants' stated facts admitted, and to sanction Plaintiff's counsel for violation of the local rules.[1] Justice is not served by taking a heavy-handed approach to violations of local procedural rules. Non-compliance by counsel slows the judicial process and is certainly frustrating to both opposing counsel and to the Court. Imposing Draconian sanctions for isolated rule violations, however, does far more than simply punishing the attorneys. Rather, such an approach destroys the vital right of the, most likely, innocent client to have her day in Court simply because her attorney mistakenly violates a local procedural rule. This Court will not be party to such an egregious offense of anyone's right to due process. Appropriately, a "District Court has considerable leeway in the application of its local rules." *Martinez v. Union Pacific R.R. Co.*, 82 F.3d 223, 227 (8th Cir.1996). Patience, restraint, goodwill, and a desire for fair play, however, have their limits; both sides of a case deserve justice in proceedings before this Court.

■ In direct defiance of the Court's Order to resubmit resisting papers that comply with the Local Rules, Plaintiff has filed a Statement of Additional Facts Precluding Summary Judgment that, save syntactical changes and the substitution of citations to Joe Slavens' original affidavit with citations to the reformatted affidavit, mirrors the original offending document. Plaintiff's resubmitted Response to Defendants' Statement of Material Facts corrects none of the original failings, and now contains new factual allegations with no record citation whatsoever. In essence, Plaintiff has presented the Court with the legal equivalent of a Rube Goldberg machine, exceedingly complicated and inevitably useless. Uncertain to the Court is whether Plaintiff's counsel's actions evince an utter lack of respect for this Court's authority and intelligence or a frightening ignorance to the purpose of summary judgment and the Federal Rules of Civil

---

1. Each of the denied requests, however, is within the Court's power under Local Rule 1.1(f).

Procedure. Regardless, neither will be tolerated.

■ Summary judgment is not a paper trial. Accordingly, "the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In a motion for summary judgment this Court has but one task, to decide, based on the evidence of record as identified in the parties' moving and resistance papers, whether there is any material dispute of fact that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane § 2712, at 574–78. The parties then share the burden of identifying the evidence that will facilitate this assessment. *Waldridge*, 24 F.3d at 921. To further this end, Fed.R.Civ.P. 56(e)(1) mandates:

> The adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, *shall* be entered against the adverse party.

In this District, Local Rule 56.1(b) supplements the terms of the federal rule. The local rule provides the specific procedure by which a resisting party must set forth the specific facts showing that there is a general issue for trial. Failure to abide by the local rule results in a party's inability to conform to the terms of the federal rule, and, per the federal rule, summary judgment, if appropriate, shall be entered against the adverse party.

In the case at bar, Plaintiff has repeatedly failed to conform its submissions to the local rules, even after this Court ordered compliance. Although the same local rules the Plaintiff is fond of ignoring offer this Court a myriad of sanctioning devices, none will be implemented at this stage. At the same time, this Court sees no point in offering Plaintiff's counsel a third opportunity to get it right. Accordingly, this Court must interpret Plaintiff's filings in light of the local and federal rules to determine whether Plaintiff has set forth specific facts showing that there is a genuine issue for trial.

For the reasons set forth above the Court finds that Plaintiff's Response to Defendant's Statement of Material Facts is insufficient under Fed.R.Civ.P. 56 and Local Rule 56.1(b). As Plaintiff has not expressly admitted, denied, or qualified each of Defendants' material fact, Plaintiff is deemed to have admitted all of Defendants' facts.

The Court further finds that Plaintiff's Statement of Additional Material Facts Precluding Summary Judgment fails under the local and federal rules as well, as Plaintiff has failed to concisely and specifically identify facts showing a genuine issue for trial. The Court, however, will not strike this document. Rather the Court is pleased to be able to abide by Plaintiff's wishes. In its Notice of Non–Waiver, admitted above, Plaintiff declares:

> ... this Notice is to clarify that Plaintiff's Resistance to Defendants' Motion for Summary Judgment incorporates both the Brief and the Statement of Additional Material Facts Precluding Summary Judgment ...

Because Plaintiff requests that the Court limit Plaintiff's resistance to these two documents, the Court will honor this request. That said, the Court refuses to waste any more time scouring the record or Plaintiff's verbose Statement of Additional Facts looking for evidence of material issues. Plaintiff has had ample opportunity to direct the Court to specific facts setting

forth genuine issues of material fact, and has failed to seize upon any of its many chances to do so. Thus, to the extent Plaintiff's brief identifies specific facts in either Plaintiff's appendix or statement of additional facts, and these facts do not contradict the admitted facts of Defendants, the Court will consider them in resistance to the motion for summary judgment.

### III. Summary Judgment Standard

The purpose of summary judgment is to "pierce the boilerplate of the pleading and assay the parties' proof in order to determine whether trial is actually required." 11 Moore's Federal Practice 3d, § 56.02, pg. 56–20 (Matthew Bender 3d ed.1997) (citing *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), cert. denied, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)).

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994); *City of Columbia*, 914 F.2d at 153; *Woodsmith Publ'g*, 904 F.2d at 1247. The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982). Rule 1 of the Federal Rules of Civil Procedure mandates that all Rules, including Rule 56, "be construed and administered to secure the just, speedy, and inexpensive determination of every action."

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(c),(e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis added). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### IV. DISCUSSION

In its present form, Plaintiff's Second Revised Amended and Substituted Complaint states five claims for relief: 1) Fraud in the inducement; 2) Post closing fraudulent conveyance; 3) Breach of the loan participation agreement; 4) Breach of the Subordination Agreement; and 5) Unjust enrichment. After granting one of Defendants' motions for summary judgment on Plaintiff's breach of fiduciary duty claim, the Court gave Plaintiff leave to amend its complaint to more clearly allege its remaining breach of contract claim. This claim was premised on breach of the loan participation agreement, not on the never before pleaded breach of the subordination agreement. Plaintiff was, therefore, without leave to add this claim as

required by Rule 15(a), and the Court now strikes the claim.[2] Fed.R.Civ.P. 15(a); *FDIC v. Kooyomjian*, 220 F.3d 10 (1st Cir.2000) (district court did not abuse discretion in striking two claims added when leave to amend granted for limited purpose). Defendant seeks summary judgment on the four remaining claims.

## A. Fraudulent Inducement

■■ A federal court, sitting in diversity, applies the relevant state's substantive law governing the burden of proving fraud at trial. *Roberts v. Francis*, 128 F.3d 647, 650 (8th Cir.1997) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). Thus, this Court looks to Iowa law for the essential elements of fraud. Proving fraud under Iowa is no simple matter. *In re Marriage of Cutler*, 588 N.W.2d 425, 430 (Iowa 1999). Recovery requires "clear and convincing evidence of [. . .] (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance, and (6) resulting injury or damage." *Id.* (quoting *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996)). Northwest's claim of fraudulent inducement is premised on alleged misleading and incomplete statements that Northwest characterizes as affirmative misrepresentations where Defendant had a legal duty to disclose such information.

■ Defendants' motion for summary judgment attacks Northwest's claim on three grounds: 1) FINB had no legal duty to disclose; 2) Northwest was not justified in relying on FINB's alleged misrepresentations because Northwest failed to exercise reasonable and ordinary diligence in investigating the loan; and 3) Northwest cannot establish justifiable reliance be-

cause Northwest disclaimed all reliance on FINB's information, representations, and judgments in the loan participation agreement. The Court agrees that Northwest disclaimed its right to rely on information provided by Defendants, and, therefore, need not address the other arguments.

■ As this Court has previously stated, the parties in this case are two sophisticated commercial lenders transacting at arms length. In such a case, the relationship between the parties is created and defined by the terms of their agreement, here the loan participation agreement. Accordingly, this Court looks to the terms of that contract to determine the nature of that agreement. Contract construction is always a matter of law, and a contract which is clear and unambiguous is not subject to either interpretation or construction. *Clinton Federal Savings & Loan Assn. v. Iowa–Des Moines Natl. Bank*, 391 N.W.2d 712, 717 (Iowa App. 1986) (citing *Owen Constr. Co. v. Iowa State Dep't of Transp.*, 274 N.W.2d 304, 306 (Iowa 1979)). Paragraph 17 of the loan participation agreement states:

LIABILITY AND DISCLAIMER OF WARRANTIES. . . . Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan . . .

The terms of paragraph 17 clearly and unambiguously express that Northwest is not relying on any of FINB's information

---

**2.** As Plaintiff had leave to elucidate its original breach of contract claim, this claim remains intact.

and that FINB has made no warranty with regards to any information provided.

Iowa courts have upheld warranty clauses as bars to certain claims. *See Clinton Federal Savings & Loan Assn.* 391 N.W.2d at 717, *Owen Constr. Co.* 274 N.W.2d at 306. In its defense, Northwest cites *First National Bank in Lenox v. Brown,* 181 N.W.2d 178, 182 (Iowa 1970), for the general rule that "misrepresentations amounting to fraud in the inducement of a contract, whether innocent or not, give rise to a right of avoidance on the part of the defrauded party." In that case, however, the party claiming fraud was not a sophisticated lending institution. Perhaps even more relevant, the complainant had not expressly waived his right to rely on information provided by the lender. Accordingly, the general rule does not apply in the present case.

▮▮▮ A number of courts in other jurisdictions, have upheld exceedingly similar warranty disclaimers to the one at issue here against claims of justifiable reliance. *See Bank of Montreal v. Signet Bank,* 193 F.3d 818, 829–30 (4th Cir.1999), *Banque Arabe et Int'l D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 155 (2nd Cir.1995), *Bank of the West v. Valley Nat'l Bank of Arizona,* 41 F.3d 471, 477 (9th Cir.1994); *First Financial Fed. Sav. & Loan Ass'n v. E.F. Hutton Mortgage Corp.,* 834 F.2d 685, 687 (8th Cir.1987), *Banco Totta e Acores v. Fleet Nat'l Bank,* 768 F.Supp. 943, 948–49 (D.R.I.1991), *First State Bank of Wheatland v. American National Bank,* 808 P.2d 804, 806 (Wy.1991). The Court finds these authorities highly instructive. This Court holds that where two sophisticated lenders enter into a contract where one party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed.

*Banque Arabe et Int'l D'Investissement,* 57 F.3d at 155. Because Northwest disclaimed reliance on any representation or warranty by Defendants, Northwest can not now assert it was fraudulently induced to enter into the loan participation agreement. Defendants' motion for summary judgment is granted on count I.

**B. Fraudulent Conveyance**

▮▮▮ Count II of Northwest's claim asserts a claim for post-closing fraudulent conduct and fraudulent conveyance. In none of its complaints or briefs, however, does Plaintiff ever identify the fraudulent transfers or conduct. Although this is not a motion for judgment on the pleadings, the Court believes the federal rules of pleading are of relevance here. Federal Rule of Civil Procedure 9(b) in pertinent part, states: "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." One of the main purposes of Federal Rule 9(b) is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." *Commercial Property Investments, Inc. v. Quality Inns Intern., Inc.,* 61 F.3d 639, 644 (8th Cir.1995) (citing *Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir.1985)). Thus, mere "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (citing *In re Flight Transp. Corp. Sec. Litig.,* 593 F.Supp. 612, 620 (D.Minn.1984)). At a minimum, a Plaintiff must assert the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation, and what was obtained or given up thereby. *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *adhered to on reh'g,* 710 F.2d 1361 (8th Cir.) (en banc), *cert denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983);

Iowa law governs the determination of the substantive issues of fraudulent conveyance. Iowa enacted the Uniform Fraudulent Transfer Act (UFTA) in 1995. The relevant section of Iowa's (UFTA) is Iowa Code Section 684.4 (1998), which states:

1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following circumstances:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor.

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, if either of the following applies:

(1) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(2) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

■ In Plaintiff's Second Revised Amended and Substituted Complaint, it asserts, without elaboration, that substantial revenues and/or assets were diverted from the debtor to defendant FNIB and done under circumstances "involving inadequacy of consideration, secrecy and concealment, financial difficulty of the transferor, threat of third party litigation, departure from usual business methods, and reservation of benefits to the transferor." Nowhere in its complaint does Plaintiff refer to § 684.4 of the Iowa

Code nor attempt to satisfy any of the elements contained therein. In fact, it is not until the Plaintiff's brief in resistance to defendant's motion for summary judgment that it addresses § 684.4(1) or any of its elements. Even there, only general assertions are made, and the factors set forth in § 684.4(2), to determine intent under § 684.4(1)(a), are spelled out, but not applied to the facts of this case.

Plaintiff's complaints and its brief on this motion contain repeated allegations of fraud and conspiracy between all parties except Plaintiff. Asserting only "mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes [is] too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985) (citations omitted). The purpose of summary judgment is to determine whether there is a genuine issue of material fact for trial. Plaintiff has failed to identify with any particularity, anywhere, what those material facts might be, as Plaintiff has failed to identify any measure of specific fraudulent conduct or any fraudulent transfers. Summary judgment is properly granted on Northwest's second count.

**C. Breach of Contract**

■ Northwest's third claim is for breach of the loan participation agreement. Northwest's brief, however, presents no facts regarding a breach of the loan participation agreement.[3] Northwest has offered no evidence to show that Defendants failed to service the loan with the same degree of care as if it were their own as mandated by paragraph 12(B) of the agreement, and Northwest has offered no evidence to suggest that Defendants in any

---

3. The brief simply tells the Court that everything it needs to know is set out in Plaintiff's statement of additional facts. The Court has stated that it will not scour this document looking for facts to support Northwest's argument.

way acted in bad faith or with willful misconduct. Accordingly, Defendants are entitled to summary judgment on Northwest's breach of contract claim.

### D. Unjust Enrichment

Northwest's remaining claim is for unjust enrichment. In its brief, Northwest offers no argument to support resistance to summary judgment. Rather, Northwest suggests the Court withhold judgment until after judgment is entered at trial. As stated above, the purpose of summary judgment is to "pierce the boilerplate of the pleading and assay the parties' proof in order to determine whether trial is actually required." 11 Moore's Federal Practice 3d, § 56.02, pg. 56–20 (Matthew Bender 3d ed.1997) (citing *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), cert. denied, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). This case has been before this Court for almost two years. Discovery has been extensive and is now closed. If Plaintiff had specific facts supporting a claim for unjust enrichment, now, rather than after a trial is held, would have been an opportune time to raise such claims. As it stands, Plaintiff offers nothing to support its claim. Summary judgment is therefore granted on Plaintiff's claim for unjust enrichment.

### V. ORDER

For the reasons stated above, Plaintiff's request for leave to file a Notice of Non–Waiver is granted and the Notice of Non–Waiver was received and reviewed. Defendants' motion for summary judgment is granted on all counts. Defendants' request for oral argument is moot.

IT IS SO ORDERED.