# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-3746

_____

Northwest Bank and Trust Company,    *
    *
        Plaintiff-Appellant,    *
    *  Appeal from the United States
        v.    *  District Court for the
    *  Southern District of Iowa.
First Illinois National Bank, now    *
known as The National Bank;    *
Christopher L. Bryant,    *
    *
        Defendants-Appellees.    *

_____

Submitted:  November 21, 2003

Filed:  December 31, 2003

_____

Before MURPHY, LAY, and BRIGHT, Circuit Judges.

_____

LAY, Circuit Judge.

Northwest Bank and Trust Company ("Northwest") alleges that First Illinois National Bank and its president, Christopher Bryant (collectively, "FINB"), acted improperly in both procuring Northwest's participation in, and managing the servicing of, a loan participation agreement.  Northwest asserts claims of:  1) fraudulent inducement, 2) fraudulent conveyance, 3) breach of fiduciary duty, 4) breach of contract, and 5) unjust enrichment.  The district court entered summary

judgment in favor of FINB on all counts, and Northwest appeals. All parties agree that Iowa law applies. We affirm in part and reverse in part.

## I

This case arises out of a loan participation agreement entered into between Northwest and FINB, two commercial lending institutions located in the Quad Cities area of eastern Iowa and western Illinois. At all times relevant to this action, one of FINB's most important customers was Thomas Jager, a Quad Cities entrepreneur. Jager had a successful business as a seller/servicer of Government National Mortgage Association ("GNMA") mortgage loans, which he owned and operated under the name of Whitehall Funding, Inc. ("Whitehall"). Between 1996 and 1998, Whitehall generated annual revenues of over $2 million, allowing Jager to engage in real estate speculation, whereby he purchased foreclosed properties and attempted to resell them at a profit.

Sometime in the fall of 1998, Jager purchased a tool and die business out of bankruptcy, renaming it New Uchtorff Corporation ("New Uchtorff"). New Uchtorff needed major cash infusions to refurbish its operation and to buy new tool and die equipment. Much of this money came in the form of an inter-company loan from Whitehall. To obtain the remainder, Jager sought out a substantial loan from FINB. Despite its amicable banking relationship with Jager, FINB was close to its legal lending limit and therefore unable to advance the entire amount requested. Jager began looking for a bank that would be willing to purchase a loan participation agreement from FINB for the additional financing of New Uchtorff.

Northwest expressed interest in acting as a participating lender in a loan to New Uchtorff with FINB acting as the lead lender. Because New Uchtorff's financial position was too precarious to support any lending, FINB proposed that the loan be made to Whitehall, the only Jager entity with a financial statement and cash flow that could service any new debt. In order to make a decision, Northwest requested

additional information about the financial position of Jager and his various corporate entities. FINB forwarded a package of materials to Northwest, including a Loan Presentation prepared by FINB and Whitehall's prior three years of audited financial statements. After reviewing these and other materials, on December 28, 1998, Northwest entered into a loan participation agreement with FINB, contributing $1.3 million of a total $3.6 million loan to Whitehall. Sometime in early 2001, Whitehall declared bankruptcy and stopped making loan payments.

The remainder of the relevant facts are disputed by the parties. Northwest asserts that the information provided to it by FINB was false and misleading in several respects, and made for the purpose of inducing Northwest to enter into a loan participation agreement. Northwest claims that rather than financing New Uchtorff, the true purpose of the loan was to allow FINB to maintain a satisfactory federal bank rating necessary to service Whitehall's GNMA accounts, which represented a significant portion of FINB's business. In fact, shortly after receiving the loan, Whitehall effectively transferred $1.5 million back to FINB. Northwest also asserts that FINB's conduct in servicing the loan was improper in several respects, and that FINB sought to further its own interests to the exclusion of Northwest, improperly applying loan repayments and failing to inform Northwest of detrimental changes in Whitehall's financial position.

For its part, FINB states that the materials it provided to Northwest were complete and accurate in all respects, and that Northwest was not misled into signing the loan participation agreement. FINB claims that rather than divert its attention from the true financial position of Jager and his corporations, FINB granted Northwest full access to its loan files, and the omissions of which Northwest now complains could have been discovered by the exercise of ordinary diligence. FINB also states that the proceeds of the loan were properly applied, as Whitehall used them to purchase equipment for New Uchtorff, and that FINB acted in complete accord with its rights and obligations as lead lender.

Factual disputes such as these are to be expected in the ordinary course of litigation. As far as a motion for summary judgment is concerned, they are generally resolved in favor of the non-moving party. This general rule is complicated, however, when one party disputes whether the "material facts" relied upon by the other are worthy of that designation. In the present appeal, both Northwest and FINB dispute the universe of material facts that were before the district court when ruling on FINB's motion for summary judgment. Under such circumstances, we must determine the factual record against which the district court's entry of summary judgment is to be evaluated.

## II

The instant uncertainty regarding the record stems from the district court's application of Local Rule 56.1 of the Local Rules of the United States District Courts for the Northern and Southern Districts of Iowa to exclude some of the material facts proffered by Northwest in opposition to FINB's motion for summary judgment. Local Rule 56.1 imposes various requirements upon the parties in connection with a motion for summary judgment. In order to assist the district court in ruling on the motion, the moving party must file a concise statement of material facts supported by specific citations to an appendix. L.R. 56.1(a). The party opposing summary judgment must file a response to the movant's statement that either "expressly admits, denies, or qualifies" each of the movant's material facts. L.R. 56.1(b)(2). A response to a statement of material fact that is not expressly admitted must be supported by specific citations to an appendix. L.R. 56.1(b). In addition, the party opposing summary judgment must file its own concise statement of material facts with supporting appendix citations. L.R. 56.1(b).

In the present case, FINB filed a Statement of Material Facts in Support of Motion for Summary Judgment ("Statement of Material Facts"). In opposition, Northwest filed a Response to Defendants' Statement of Material Facts ("Response"), as well as a Statement of Additional Material Facts Precluding Summary Judgment

-4-

("Statement of Additional Material Facts"). The district court found that Northwest's filings did not comport with the Local Rule. See Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 221 F. Supp. 2d 1000, 1003-06 (S.D. Iowa 2002). As a sanction for this noncompliance, the district court ordered that Northwest be deemed to have admitted all of FINB's Statement of Material Facts. Id. at 1005. In addition, the district court limited its consideration of Northwest's Statement of Additional Material Facts to those facts that were specifically referenced by Northwest in its brief in opposition to summary judgment to the extent that they did not contradict those of FINB. Id. at 1005-06.

We review the district court's application of its local rules for an abuse of discretion. See Silberstein v. IRS, 16 F.3d 858, 860 (8th Cir. 1994). The concision and specificity required by Local Rule 56.1 seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge. See Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994) ("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions."). The district court found that Northwest's voluminous filings were replete with conclusory allegations and legal argument, obfuscating any concise and specific statements of material fact that were contained within their pages. Local Rule 56.1 exists to prevent a district court from engaging in the proverbial search for a needle in the haystack. In fact, although not required to do so by the Local Rules, the district court exercised some lenity in considering those specific facts referenced by Northwest in its brief. See Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995). We therefore hold the district court committed no abuse of discretion.

## III

Having thus determined the extent of the record on appeal, we review the district court's entry of summary judgment *de novo*, viewing the evidence in the light

most favorable to the non-moving party.  See Putman v. Unity Health Sys., 348 F.3d 732, 733 (8th Cir. 2003).  Northwest's claims against FINB can be divided into two categories: 1) misconduct occurring prior to the execution of the loan participation agreement, which encompasses Northwest's claim of fraudulent inducement; and 2) misconduct occurring after the execution of the loan participation agreement, encompassing Northwest's claims of fraudulent conveyance, breach of fiduciary duty, breach of contract, and unjust enrichment.  We consider each category in turn.

## A.  Pre-closing Misconduct

A party seeking to establish fraud under Iowa law "must prove several factors by clear and convincing evidence, including (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance, and (6) resulting injury or damage."  In re Marriage of Cutler, 588 N.W.2d 425, 430 (Iowa 1999).  In its order granting summary judgment in favor of FINB on Northwest's claim of fraudulent inducement, the district court determined that Northwest could not establish justifiable reliance as a matter of law.  In so ruling, it relied upon a disclaimer provision contained within the loan participation agreement which stated in part:

> 17.   **LIABILITY AND DISCLAIMER OF WARRANTIES.**
> Purchaser [Northwest] acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan.  Purchaser acknowledges that it is not relying upon Seller's [FINB] judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing.  Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or

priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan.

The district court interpreted this contractual language to "clearly and unambiguously express that Northwest [was] not relying on any of FINB's information and that FINB ha[d] made no warranty with regards to any information provided." Northwest Bank, 221 F. Supp. 2d at 1007-08. Although it noted the general rule that "misrepresentations amounting to fraud in the inducement of a contract . . . give rise to a right of avoidance on the part of the defrauded party," id. at 1008 (quoting First Nat'l Bank v. Brown, 181 N.W.2d 178, 182 (Iowa 1970)), the district court stated that this rule was inapplicable where the party claiming fraudulent inducement was a sophisticated lending institution. It therefore held that "where two sophisticated lenders enter into a contract where one party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed." Id.

Under Iowa law, contractual disclaimers are ineffective to bar a plaintiff from asserting a claim for fraudulent inducement. See Hall v. Crow, 34 N.W.2d 195, 199 (Iowa 1948) ("[W]here there is evidence of fraudulent misrepresentations in the inception of a contract[,] such misrepresentations can be the basis for either an action to rescind or for damages, *despite the limiting provisions of a contract*.") (emphasis added); see also Robinson v. Perpetual Servs. Corp., 412 N.W.2d 562, 567 (Iowa 1987) (reaffirming the principle laid down in Hall); Int'l Milling Co. v. Gisch, 137 N.W.2d 625, 630 (Iowa 1965) (same). We find no language in these cases to support the district court's conclusion that the applicability of this rule turns upon the sophistication of the contracting parties. Instead, the rule is premised on the principle that the fraudulent inducement precedes the formation of the contract, and that to give preclusive effect to language contained therein would allow a party to bind the defrauded party to the contract through the use of a boilerplate disclaimer. See Hall,

34 N.W.2d at 199 ("The same public policy that in general sanctions the avoidance of a promise obtained by deceit strike[s] down[] all attempts to circumvent that policy by means of contractual devices.") (quoting Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941); see also Danann Realty Corp. v. Harris, 157 N.E.2d 597, 604-12 (N.Y. 1959) (Fuld, J., dissenting). Thus, we hold that the district court erred in granting summary judgment in favor of FINB on Northwest's claim of fraudulent inducement. We accordingly vacate that portion of the district court's order and remand for a plenary trial on Northwest's claim of fraudulent inducement.

## B. Post-closing Misconduct

In sharp contrast to its claim of fraudulent inducement, the remainder of Northwest's claims lack factual support and thus do not warrant extended discussion. Due to the district court's application of Local Rule 56.1 and concurrent imposition of sanctions against Northwest, the majority of the acts and omissions of FINB that Northwest asserts as forming the factual predicate for its claims are not part of the record on appeal. On this basis alone, the district court was correct to grant summary judgment in favor of FINB on Northwest's claims of fraudulent conveyance, breach of fiduciary duty, breach of contract, and unjust enrichment.

Moreover, we agree with the district court that summary judgment was proper on Northwest's claim of fraudulent conveyance on the additional basis that Northwest failed to set forth the facts underlying such a claim with the requisite particularity. See Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (affirming the entry of summary judgment where the plaintiff failed to set forth the basis of a claim of fraudulent misrepresentation with particularity); see also Fed. R. Civ. P. 9(b). Finally, we believe that the district court correctly discerned that although never having spoken to the issue, the Iowa Supreme Court would not recognize the existence of a fiduciary relationship between two sophisticated commercial lending institutions absent express contractual language to the contrary.

In reaching this conclusion, the district court thoroughly examined analogous cases from other jurisdictions, see, e.g., First Citizens Fed. Sav. & Loan Ass'n v. Worthern Bank & Trust Co., 919 F.2d 510 (9th Cir. 1990), and Northwest offers no compelling reason to question this analysis.

**IV**

For the foregoing reasons, the judgment of the district court granting summary judgment to FINB on Northwest's claims of fraudulent conveyance, breach of fiduciary duty, breach of contract, and unjust enrichment is AFFIRMED. The judgment of the district court granting summary judgment to FINB on Northwest's claim of fraudulent inducement is REVERSED and REMANDED.

_____