**Cheryl O. CORDRAY, Plaintiff,**

v.

**135–80 TRAVEL PLAZA, INC., d/b/a Petro of York, Inc., Defendant.**

No. 4:04CV3140.

United States District Court, D. Nebraska.

Feb. 17, 2005.

Joy A. Shiffermiller, Polsky, Shiffermiller Law Firm, Lincoln, NE, for Plaintiff.

Joseph P. Shelton, Fisher, Phillips Law Firm, Atlanta, GA, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The defendant, 135–80 Travel Plaza, Inc., doing business as Petro of York (Petro), has moved for summary judgment in this employment discrimination case. I will grant Petro's motion and dismiss the complaint filed by its former employee, the plaintiff, Cheryl O. Cordray (Cordray).[1]

## I. BACKGROUND

Petro operates a big truck stop adjacent to Interstate 80 in York, Nebraska, that consists of a truck fueling station or "fuel island" (which includes a mini convenience store and mini Pizza Hut), a truck wash, a truck lube bay, a large convenience store, and an Iron Skillet restaurant. (Ex. A, Cordray Deposition, pp. 109:19–115:13.)[2] Cordray began working for Petro in May of 2001 as a cashier at the fuel island. (Ex. A, pp. 22:14–16, 90:5–7.)

Petro prohibits sexual harassment by and of its employees. (Ex. A, pp. 92:10–24 and attached Deposition Exhibit 1.) Cordray received this policy upon her hire and it was accessible to her throughout her employment. (Ex. A, pp. 92:10–93:20.) Petro also reinforced to Cordray its commitment to a harassment-free workplace through various training documents. (Ex. A, pp. 98:2–102:15; 137:10–138:14 and Dep. Ex. 3, 4, and 5.)

Cordray alleges that she was sexually harassed by one of her co-workers, Harold Young, who worked in and around the fuel island as a maintenance person, cleaning up and doing various jobs. (Ex. A, pp. 139:13–18, 119:14–24, 121:4–7.) According to Cordray, the sexual harassment began approximately nine months after she had been working at Petro (i.e., sometime after January of 2002). (Ex. A, pp. 154:6–20, 169:12–13.)

Petro responded when Cordray raised concerns regarding Young's conduct. Cordray said that her supervisors took action anytime she mentioned anything about Young's actions and that she could "honestly say that they did" everything she asked of them with regard to the situation. (Ex. A, pp. 200:21–201:13.) Petro's responsive actions included: talking to Young about Cordray's concerns; changing Young's work schedule; and issuing Young a disciplinary action notice on May 30, 2002. (Ex. A, pp. 157:1–158:22, 180:21–181:2, 183:23–184:6, 187:1–13, 196:5–20; Ex. B, Affidavit of Richard D'Alanno, ¶ 6 and Affidavit Attachment 1.)

While investigating Cordray's allegations against Young, Petro also discovered that Cordray had engaged in conduct that violated company policies. (Ex. B, ¶ 7.) Petro therefore issued a counseling memo to Cordray regarding her actions. (Id.)[3]

---

1. Cordray asserts two claims: (1) sexual harassment and (2) retaliation. (Filing 37, Pretrial Conference Order, ¶ C.) While her complaint alleges that Petro violated both Title VII and the Nebraska Fair Employment Practices Act, Nebraska courts look to federal decisions when construing the Nebraska act. See Malone v. Eaton Corp., 187 F.3d 960, 962 n. 3 (8th Cir.1999).

2. The citations to the record in part I of this opinion are to the defendant's index of evidence (filing 27).

3. The counseling memorandum, signed by Cordray and two managers, was dated May 31, 2002, the day after Petro issued a written warning to Young. (Ex. A, Dep.Ex. 7.) According the memo she signed, Cordray violat-

Cordray admits that she engaged in the conduct for which she was counseled and that her actions violated company policies. (Ex. A, pp. 133:23–134:12, 135:19–136:4, 136:18–20, 219:16–220:9, 220:14–222:13, and Dep. Ex. 2; Ex. B, ¶ 8 and Affidavit Attachment 2.) The counseling memo did not have any adverse effect on Cordray's employment with Petro. (Ex. B, ¶ 7.)

In fact, Cordray's employment with Petro ended with her voluntary resignation on June 29, 2002. (Ex. A, pp. 22:8–14.) Cordray walked off the job that night, without any notice, after her son had an altercation with Harold Young's mother, who also worked at the fuel island. That incident resulted in the authorities being called and, later, a protection order being issued against Cordray's son. (Ex. A, pp. 116:9–11, 243:24–246:20, 250:7–251:11, 259:14–25 and Dep. Ex. 9.)

In summary, looking at the record in the light most favorable to the plaintiff, I find the undisputed material facts to be these:

1. Petro operates a multi-use complex in York, Nebraska that includes a truck fueling station where Cordray worked as a cashier from May of 2001 until June 29, 2002. (Ex. A, pp. 109:23–25, 111:7–112:11, 22:14–16, 90:5–7, 22:8–14.)

2. Cordray claims that she was sexually harassed by her co-worker, Harold Young. (Ex. A, 139:13–18.) That harassment was limited to the following:

   A. Young often stared at Cordray's body, most particularly her breasts. (Ex. A, pp. 158:23–159:8.)

   B. Young was frequently "around" when Cordray joked with truck drivers. (Ex. A, pp. 160:2–5, 171:4–14.)

   C. On one occasion, Young asked Cordray if she was married and if she dated men. (Ex. A, pp. 159:10–11, 169:2–9.)

   D. On one occasion, Young stood near Cordray and she backed into him. (Ex. A, pp. 159:24–25, 169:14–170:6.)

   E. On one occasion, Young called Cordray a "lot lizard" (i.e., a prostitute for truck drivers) after she was seen having coffee with a truck driver. (Ex. A, pp. 168:20, 172:13–174:25.)

3. Cordray claims that her sexual harassment occurred over a period of about 4 months. (Ex. A, pp. 154:6–20, 184:2–19, 187:18–189:11, 211:8–12, 234:11–235:8.)

4. Cordray's supervisors and managers did everything she asked of them in response to her reports concerning Young's actions. (Ex. A, pp. 200:21–201:13.)

5. Petro's responsive actions included talking to Young about Cordray's concerns, moving Young to work on a different shift than Cordray, changing Young's days off so that they were different from Cordrays, and issuing Young a disciplinary action notice. (Ex. A, pp. 157:1–158:2, 180:21–181:2, 183:23–184:6, 187:1–13, 196:5–20, 240:16–242:1, Ex. B, ¶ 6.)

6. Cordray violated Petro company policies and received a counseling

ed Petro's written policies by accompanying a truck driver to the Iron Skillet for coffee, using profanity, threatening a driver with castration, and openly discussing confidential issues with customers and with other employees. The memo also recounts that Cordray "agreed that should any situation arise with Harold that makes you feel uncomfortable you will contact [named managers] immediately, in accordance with our company policy, and not discuss it with customers or any other [employee] that cannot help resolve the issue." (*Id.*)

memo regarding the same. (Ex. A, pp. 133:23–134:12, 135:19–136:4, 136:8–20, 219:16–220:9, 220:14–222:13 and Dep. Ex. 2; Ex. B, ¶ 8 and Affidavit Attachment 2).

7. The counseling memo Cordray received did not have an adverse effect on her employment with Petro. (Ex. B, ¶ 7).

## II. ANALYSIS

I first review the plaintiff's failure to comply with Federal Rule of Civil Procedure 56 and this court's related local rules. I then explain (1) why Petro's response to Cordray's complaints insulates it from liability on the sexual harassment claim; and (2) why Cordray's retaliation claim must fail for lack of an adverse employment action and lack of causation.

### A.

"Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Stuckey,* 255 F.3d 528, 531 (8th Cir.2001) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). After reading the plaintiff's submissions, it is clear that she thinks otherwise.

After first giving the background facts, the defendant stated the undisputed material facts in 7 concise, numbered paragraphs (covering one page) appropriately referencing a record authenticated by a sworn deposition or by an affidavit. (Filing 26, Defendant's Brief, p. 4; Filing 27, Defendant's Index of Evidence.) In con-

trast, the plaintiff responded with 65 numbered paragraphs of facts (covering 10 pages) and she relied upon various documents that were not properly authenticated. (Filing 31, Plaintiff's Brief, pp. 1–10; Filing 30, Plaintiff's Index of Evidence, Ex. 2 (referring to copies of documents produced by the defendant in discovery).)

No attempt was made at focusing the plaintiff's string citation of facts to the defendant's short and simple assertions of undisputed material facts. Aside from indicating that they had been received from the defendant in discovery, the plaintiff also made no effort to authenticate copies of the documents she relied upon by providing an affidavit or a deposition from a person with knowledge of them. More than a few of the important documents are hand-written and lack signatures or other clear indications of who wrote them. (E.g, Filing 30, Ex. 2 at D–00019 through D–00038.)

Federal Rule of Civil Procedure 56(e) required the plaintiff to controvert the defendant's assertions of fact by following a specific procedure. Condensed, that procedure required the plaintiff to controvert the defendant's assertions of fact by setting forth "such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). If the plaintiff "does not so respond," then summary judgment "shall be entered" if appropriate. *Id.*

Our local rules of practice also required the adherence to a specific procedure. NeCivR 56.1(b)(1)[4] provides (and requires) as follows:

---

4. This rule and (all of the "new" local rules) became effective August 6, 2004. There was widespread publicity about the new rules. A free seminar for lawyers was offered to the bar by the court and its Federal Practice Committee about the new rules during the Nebraska Bar Association annual meeting in the fall of 2004. Soon after their effective date, the rules were made available on the court's website for free. The importance of

NeCivR 56.1(b)(1) was stressed by Chief Judge Bataillon and his (then) senior career law clerk, Therese Bollerup (now the Chief Deputy Clerk of Court), in a feature article published by the Nebraska State Bar Association. Joseph F. Bataillon and M. Therese Bollerup, *An Overview of the Federal District Court's New General and Civil Local Rules,* 2004 Nebraska Lawyer, 22, 25 (Sept.2004), available at *http://www.nebar.com/pdfs/nelaw-*

The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. *Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.*

(Emphasis in original.) The concision and specificity required by the local rule "seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." *Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank,* 354 F.3d 721, 725 (8th Cir.2003).

Moreover, NECivR 7.1(b)(2)(C), dealing with authentication of documents offered in opposition to a motion, makes clear that any document offered by the opposing party "must be identified and authenticated by affidavit" and the "affidavit must be made on personal knowledge, set forth such facts as would be admissible in evidence, [and] show affirmatively that the affiant is competent to testify . . . ." The rule cautions that "a party who fails to

observe the requirements of this rule may be deemed to have abandoned in whole or in part that party's position on the pending motion." NECivR 7.1. *See also Stuart v. General Motors Corp.,* 217 F.3d 621, 636 n. 20 (8th Cir.2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed.R.Civ.P. 56(e). Documents which do not meet those requirements cannot be considered.").

■ Because the plaintiff has not properly responded to the defendant's motion for summary judgment—she has not presented evidence that would be admissible at trial (because documents are not properly authenticated)[5] and has not included in her brief a concise response to the moving party's statement of material facts addressing each numbered paragraph in the *movant's* statement by pinpoint citation to a proper record[6]—I find and conclude that the defendant's statement of undisputed material facts is generally true. *See, e.g., Bennett v. Dr Pepper/Seven Up, Inc.,* 295 F.3d 805, 808–09 (8th Cir.2002) (affirming summary judgment; stating that the obligation to point out genuine issues of material fact that would preclude judgment as a matter of law for defendant lay with plaintiff, and the district court

---

yer/2004/September/20049e.pdf. There is no excuse for not knowing and following the rules.

**5.** For example, in opposition to the motion, the plaintiff attached a copy of a one-page note, appearing to have been made on two different dates in May of *2001,* reciting something about Young looking at the plaintiff's breasts. (Filing 30, Ex. 2 at D–000037 (mistakenly referred to in the plaintiff's brief (filing 31, p. 1) as "D 00039.")) The notes were produced to the plaintiff in response to discovery, but they are not authenticated by affidavit or otherwise. The notes do not indicate

who wrote them and the dates are obviously wrong if one assumes, as I suppose I must for purposes of summary judgment, that the plaintiff's sworn deposition testimony about timing is true. Without an affidavit or deposition from a person with knowledge laying the proper foundation, how am I to know, for example, when the notes were truly written and who wrote them? Authentication means more than "my opponent gave me a document."

**6.** None of these deficiencies are matters of form. *See* Fed.R.Civ.P. 83(a)(2).

was not bound, by rule or otherwise, to search the record for genuine issues of fact); *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir.1997) (in a sex-discrimination case, affirming the grant of summary judgment where a plaintiff did not follow a local rule and stating that: "A local rule of a district court has the force of law, and the parties are charged with knowledge of the district court's rules . . . .") (citations omitted).

In making this determination, I do not do so to punish the plaintiff or her counsel, but, rather, to expedite in an appropriate fashion the resolution of this case by requiring reasonable, but not rigid, adherence to the rules. Nevertheless, and to the extent that I could reasonably do so, I have reviewed the plaintiff's submissions as if she had complied with the rules. After that review, I find and conclude that the undisputed material facts are as I have recited them above.

### B.

The plaintiff's sexual harassment claim is very weak on every count. However, for the sake of brevity, I concentrate on one glaring deficiency that clearly warrants the grant of summary judgment.

■ Initially, it is well to remember that Petro is not alleged to have harassed Cordray. Instead, it is alleged that Petro failed to take prompt, remedial action to correct Young's alleged misconduct. *See, e.g., Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir.1998) (on the alleged failure of the employer to take prompt, remedial action, the Court of Appeals affirmed a jury verdict in favor of a female cashier at a truck stop (1) where there was evidence showing that the truck stop's supervisor failed to take action against the offending co-employee for several years after the plaintiff had first complained and despite subsequent complaints over the ensuing years; and (2) where the undisputed

evidence showed that the supervisor only acted to reprimand the offending co-employee when another, younger female employee complained). Thus, if I am persuaded that no reasonable jury could find on these undisputed facts that Petro's actions were insufficient, then I must grant summary judgment. *See, e.g., Rheineck v. Hutchinson Technology, Inc.*, 261 F.3d 751, 755–56 (8th Cir.2001) (affirming grant of summary judgment where the Court of Appeals concluded that "no reasonable juror could find [the company's] remedial actions to be anything but prompt and reasonably designed to end the harassment[,]" and adding that the plaintiff "has failed to create a genuine issue of material fact on the propriety of the [company's] response.")

It is undisputed (1) that Petro, while maintaining a clear written policy against sexual harassment and while providing its employees with training documents responsive to that policy, took prompt action to try to correct Young's alleged misbehavior; and (2) that Petro's action satisfied Cordray until Petro counseled Cordray that she, too, must obey the rules. In particular, it is undisputed that Petro investigated the matter, took at least one third-party statement, moved Young to a different shift, and changed his days off so that he did not work with Cordray. It is not disputed that Young was issued a stern disciplinary notice that informed him to have no contact with Cordray, not to converse with her if they were required to work together, and not to retaliate in any way against her. It is undisputed that Petro instructed Young that if he violated the warning he could be fired. It is undisputed that Petro required Young to sign the warning in the presence of two managers.

Cordray does not attack the facts regarding Petro's actions, but instead simply

disputes the conclusion to be drawn from these facts. Because I am satisfied as a matter of law that the actions were prompt and adequate when judged against the undisputed material facts, summary judgment will be granted. *See, e.g., Scusa v. Nestle U.S.A.,* 181 F.3d 958, 967 (8th Cir.1999) (stating that an employer is not liable for sexual harassment if it takes prompt remedial action which is reasonably calculated to end the harassment once employer knew or should have known about the harassment; affirming grant of summary when management took appropriate action to end alleged sexual harassment of female factory employee, thus precluding liability for sexual harassment under Title VII; among other things, undisputed evidence showed that every time employee complained to management, it responded to her satisfaction).

### C.

The plaintiff's retaliation claim is likewise very weak on all counts. Again, for the sake of brevity, I concentrate on the most obvious of the problems.

█ In order to recover on her retaliation claim, Cordray must prove that: (1) she engaged in statutorily protected activity; (2) an adverse employment action took place; and (3) there was a causal connection between the two events. *See, e.g., Henthorn v. Capitol Communications, Inc.,* 359 F.3d 1021, 1028 (8th Cir.2004) (affirming grant of summary judgment where negative performance evaluations did not harm the plaintiff's employment position); *LaCroix v. Sears,* 240 F.3d 688,

691 (8th Cir.2001) (affirming grant of summary judgment where memos critical of the plaintiff's performance did not materially change her employment status and where there was no causal connection between her complaints and a notice that her job would eventually be eliminated). Cordray's retaliation claim fails for lack of proof on elements two and three.

█ It is factually undisputed that Cordray was counseled, but not otherwise disciplined, for admittedly violating Petro's rules, and that she walked off the job after a dispute between her son and Harold Young's mother. There is no evidence upon which a reasonable jury could conclude that Cordray's job status was harmed by the counseling memo or any other action taken by Petro, or that Cordray's job status was harmed by Petro, either in whole or in part, because of her actions in complaining to Petro about Young. Therefore, summary judgment will be granted on the retaliation claim.[7]

IT IS ORDERED that the defendant's summary judgment motion (filing 25) is granted, and that judgment for the defendant will be entered by separate document.

### JUDGMENT

Pursuant to the memorandum and order entered this date,

JUDGMENT is entered for the defendant, 135–80 Travel Plaza, Inc., d/b/a Petro of York, Inc., and against the plaintiff, Cheryl O. Cordray, providing that the plaintiff takes nothing and her complaint is

---

7. To the extent that Cordray argues that there was a continuing hostile work environment that was the product of retaliation as evidenced by the fact that she had problems with employees, other than Young, laughing at her, that behavior, if true, is not sufficiently severe to constitute an adverse employment action which can be attributed to Petro. To the extent that Cordray argues that Petro made her working conditions intolerable in retaliation and in order to force her to quit, as evidenced by the fact that she was required as a condition of her employment to hand Young the key to a pump house, a reasonable person in Cordray's situation would not have found such a requirement so intolerable as to force a resignation.

dismissed with prejudice. Costs shall be taxed in favor of the defendant.